NEPONSET LANDING CORPORATION,   )
   )
      Plaintiff,   )
   v.   )   CIVIL ACTION
   )   NO. 10-11963-JGD
THE NORTHWESTERN MUTUAL   )
LIFE INSURANCE COMPANY   )
   )
      Defendant.   )

## MEMORANDUM OF DECISION AND ORDER ON
## MOTION OF JOE COTTER AND CHRISTINE WAY COTTER TO
## INTERVENE, AMEND THE COMPLAINT, AND REACH AND APPLY

June 10, 2011

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Neponset Landing Corporation ("Neponset"), and the defendant,

The Northwestern Mutual Life Insurance Company ("NML"), are parties to a Real Estate

Purchase Agreement dated April 18, 2006 ("Purchase Agreement"), pursuant to which

Neponset sold property, including a residential apartment building located at 2 Hancock

Street, Quincy, Massachusetts (the "Property"), to NML. Neponset has brought this

action against NML seeking damages for the alleged failure of NML to fulfill its "post

closing obligations" and make payments due under the Purchase Agreement. NML, in

turn, has brought counterclaims against Neponset for various pre-closing payments

allegedly due under the Purchase Agreement, and against Terence Conroy, Sr.

("Conroy"), who allegedly guaranteed Neponset's payment of those expenses.

This matter is presently before the court on the "Motion of Joe Cotter and Christine Way Cotter to Intervene, Amend the Complaint, and Reach and Apply" (Docket No. 23). By their Motion, Joe and Christine Way Cotter (the "Cotters") are seeking to intervene as plaintiffs in this action as a matter of right pursuant to Fed. R. Civ. P. 24(a) in order to assert a reach and apply claim under Mass. Gen. Laws ch. 214, § 3(6) and obtain a preliminary injunction under Fed. R. Civ. P 65(a). (See Cotters' Mem. (Docket No. 24) at 8). Specifically, the Cotters are seeking to enjoin NML from paying any judgment or settlement to Neponset until the Cotters have had an opportunity to demonstrate their entitlement to those funds, by virtue of claims they have brought against Neponset, NML and others which are pending in Norfolk Superior Court. Neponset, NML, and Conroy jointly oppose the Cotters' motion. (See Joint Opp. Mem. (Docket 27)). As detailed below, this court finds that the Cotters have failed to satisfy the requirements of Fed. R. Civ. P. 24(a) and Mass. Gen. Laws ch. 214, § 3(6). Accordingly, their motion to intervene and reach and apply is DENIED.

## II. <u>STATEMENT OF FACTS</u>

At least two distinct sets of disputes have arisen from the development and sale of the residential apartment building at 2 Hancock Street, Quincy, Massachusetts. The first dispute (the "Cotter Suit") arises from the alleged breach of a Settlement Agreement dated July 7, 2005, which was designed to resolve disputes between the Cotters and other local citizens, on the one hand, and the developer of the Property, on the other, concern-

ing the environmental impact of the development of the Property. (See Grumbach Aff.[1]

¶ 2 and Ex. A). Neponset and NML, as owners of the Property, are among the defendants

in that case, which is pending in Norfolk Superior Court. The second dispute (the

"Neponset Suit"), which is the one presently pending in this court, arises from the alleged

breach of the Purchase Agreement dated April 18, 2006 pursuant to which Neponset sold

the Property to NML. Since the Cotters' right to intervene in this action depends on the

relationship of the claims in both cases, some description of the pending cases is

necessary. This court expresses no opinion as to the merits of any of the claims, or the

accuracy of any facts alleged by the parties.

## The Cotter Suit

According to the Cotters, in 2002 Conroy Development Corporation as the devel-

oper proposed the construction of a 280-unit residential building which now stands

adjacent to the Neponset River at 2 Hancock Street, Quincy, Massachusetts. (See Cotter

Compl. ¶ 12). In preparation for the development of the site, the developer sought

various environmental permits from the City of Quincy and state agencies. (Id. at ¶ 13).

Throughout the permitting process, the Cotters, other Quincy residents, and the Neponset

River Watershed Association, Inc. (collectively, "The River Group") sought to ensure

public access to the river front portion of the Property by participating in environmental

---

[1] The Cotters have submitted the Affidavit of James E. Grumbach, Esq., their counsel in both the instant action and the state court action, which is found at Docket No. 25. A copy of the complaint filed in Norfolk Superior Court is attached to the Grumbach Affidavit as Exhibit A.

hearings and opposing various administrative decisions. (Id. at ¶ 14). On July 7, 2005, a Settlement Agreement was executed between The River Group and the then-owner of the Property. (Id. at ¶ 19). The Property was subsequently sold to Neponset, and then to NML. (See id. at ¶ 24). (For convenience, the owners will be referred to collectively as the "Developer"). Pursuant to the Settlement Agreement, The River Group dismissed all pending appeals and litigation against the Developer, thus allowing the Developer to secure the required permits and proceed with development of the Property. (Id. at ¶ 22). In exchange for the dismissal of The River Group's lawsuits and appeals, the Developer agreed to undertake and obtain permits for certain environmental improvements ("Improvements") designed to provide public access to the Neponset River. (Id. at ¶¶ 25-29). The Improvements included, among other things: construction of a public walkway and benches, partial restoration of the natural shoreline, and construction of a boat launch. (Id. at ¶ 26). The Settlement Agreement also contained a liquidated damages clause, providing that $1,000 per day would be paid in the event the contract was breached. (Id. at ¶ 50).

The Cotters claim the Developer breached the Settlement Agreement by, among other things, willfully presenting an inadequate permitting presentation to the Quincy Conservation Commission, failing to apply for certain permits and/or appeal adverse decisions, failing to provide required updates to The River Group, failing to construct the Improvements in a timely manner, and failing to allow use of the public access area for a boat launch. (Id. at ¶¶ 31, 34-36, 44). The Cotters filed suit in Norfolk Superior Court in

June 2009. In that suit, which is still pending, the plaintiffs allege, <u>inter</u> <u>alia</u>, breach of the Settlement Agreement. Neponset and NML are defendants in that action. The Cotters are seeking specific performance, a permanent injunction, monetary damages, and related relief. (<u>Id.</u> at Prayers for Relief).

## The Neponset Suit

The Neponset Suit was commenced in state court, and removed to this court on November 15, 2010. This litigation centers around the Purchase Agreement of April 18, 2006 pursuant to which Neponset sold the Property to NML. As summarized in the complaint:

> The Agreement required, inter alia, that NML pay Neponset an Earnout Amount (the "Earnout") at a date agreed upon by the parties (the "Payout Date"). Pursuant to the Agreement, NML agreed to use good faith efforts to manage the Property in a commercially reason-able manner in order to maximize the Earnout due to Neponset. Notwithstanding the parties' agreement, NML breached various obligations under the Agreement and following the Payout Date failed and refused to pay Neponset any Earnout. Neponset now brings this action to recover for NML's breaches of the contract, breaches of the implied covenant of good faith and fair dealing and for NML's violations of G.L. c. 93A.

(Compl. ¶ 1). NML has denied any liability, and has asserted counterclaims against Neponset and Conroy. (Docket No. 19). Therein, NML contends that Neponset breached the Purchase Agreement and is liable to NML for pre-closing expenses and real estate taxes, and certain rental income earned during a specified period. (Countercl. ¶ 14, Count I). NML also contends that any damages claimed by Neponset in this lawsuit must be offset by damages incurred by NML. (Countercl. ¶ 18, Count II). Further, NML

contends that Conroy breached the personal guarantee he executed in connection with the Purchase Agreement, by failing to make the payments owed by Neponset. (Counterclaim ¶¶ 10, 20, Count III).

## The Motion to Intervene

By their motion, the Cotters are seeking to intervene in this litigation in order to bring a reach and apply claim, and to enjoin payment of any judgment in this action to Neponset, so that they may secure those assets for the purpose of payment of the judgment they expect to obtain in the Cotter Suit, which is still pending in Norfolk Superior Court. The Cotters are not seeking to participate in the merits of this litigation or to pursue discovery. They simply want to insure that any payment made in this case is paid directly to them. The Cotters estimate that the damages to which they are entitled in the Cotter Suit exceed $1 million under the liquidated damages provision of their Settlement Agreement.

Additional facts relevant to this court's analysis are provided below.

## III.  ANALYSIS

### A.    Intervention of Right

The Cotters are seeking to intervene in this action as of right pursuant to Fed. R. Civ. P. 24(a). Because the Cotters have failed to show both a direct and substantial interest in the subject matter of the litigation, and have failed to show that the disposition

of this action may as a practical matter impair or impede their ability to protect that interest, their motion for intervention as of right is denied.

Fed. R. Civ. P. 24 provides in relevant part:

> (a) **Intervention of Right**.  On timely motion, the court must permit anyone to intervene who:
>
> ...
>
> > (2)  claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

An applicant seeking intervention as of right must meet four requirements.  "First, the application must be timely.  Second, the applicant must have a direct and substantial interest in the subject matter of the litigation.  Third, the applicant must be so situated that the disposition of the action may as a practical matter impair or impede its ability to protect that interest.  Finally, the applicant's interest must be inadequately represented by existing parties."  Caterino v. Barry, 922 F.2d 37, 39-40 (1st Cir. 1990).  An applicant who fails to meet any one of the four requirements cannot intervene as of right under Rule 24(a)(2).  Id. at 40 (citing Travelers Indem. Co. v. Dingwell, 884 F.2d 629, 637 (1st Cir. 1989)).  In this case, the Cotters have failed to establish the second and third essential elements of Rule 24(a).

The Cotters have not shown they have a direct and substantial interest in the subject matter of the litigation.  "[T]he intervenor's claims must bear a 'sufficiently close relationship' to the dispute between the original litigants" and "[t]he interest must be

direct, not contingent." <u>Dingwell</u>, 884 F.2d at 638 (citations omitted). "An interest that is remote from the subject matter of the proceeding . . . will not satisfy the rule." <u>Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.</u>, 922 F.2d 92, 97 (2d Cir. 1990).

The subject matter of the Cotters' claims is simply not sufficiently related to the present action to satisfy the requirements of Rule 24(a). While the Cotter Suit and the Neponset Suit both involve the property located at 2 Hancock Street, Quincy, Massachusetts, the subject matter of the two suits is quite different. On one hand, the Cotters' state court claims arise from the alleged breach of the Settlement Agreement between The River Group and the Developer, and pertain to whether environmental Improvements were undertaken by the Developer. On the other hand, the Neponset Suit involves the alleged breach of the Purchase Agreement between Neponset and NML, and pertains to whether both parties fulfilled their payment obligations surrounding the conveyance of the Property.

The Cotters argue they have an economic interest in the outcome of this case because it will bear on whether they are able to collect a potential judgment in their pending suit in state court. However, "[a]n interest is cognizable under Rule 24(a)(2) only where it is 'direct, substantial, and legally protectable.' An economic interest in the outcome of the litigation is not itself sufficient to warrant mandatory intervention." <u>Med. Liab. Mut. Ins. Co. v. Alan Curtis LLC</u>, 485 F.3d 1006, 1008 (8th Cir. 2007) (internal citations omitted). A plaintiff's interest in ensuring that defendants in a previously filed state lawsuit have sufficient resources to satisfy a judgment that might be obtained against

them "is too remote and indirect to qualify as a cognizable interest under Rule 24(a)(2)." Id. at 1009. See also Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc., 425 F.3d 1308, 1311 (11th Cir. 2005) (no right to intervene in insurance coverage dispute to ensure adequate pool from which to satisfy potential judgment).[2]

Furthermore, the Cotters' economic interest in this suit is insufficient under Rule 24(a) because it is contingent on the success of their pending state court claims. "An interest that is . . . contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." Wash. Elec. Coop., Inc., 922 F.2d at 97. While the Cotters may believe that the success of their state court litigation is preor-dained, Neponset and NML believe that they have significant defenses to the litigation. Moreover, they claim that The River Group itself breached the Settlement Agreement by appealing an administrative decision regarding the environmental impact of the develop-ment of the Property. (See Cotters' Mem. at 18). As the matter now stands, the Cotters have not even established that they are entitled to recover anything in their state court litigation — and if they fail in the state court proceeding, they have no conceivable

---

[2] See also Jet Traders Inv. Corp. v. Tekair, Ltd., 89 F.R.D. 560, 570 (D. Del. 1981) ("the mere fact that the first action may decrease the ability of the intervenor to collect a potential judgment against the defendant is insufficient to be considered a substantial impairment of an interest for the purposes of Rule 24(a)(2). This is so because if logically extended such a rule would give the right to intervene in an action to all persons with potential claims against any party in the action on the ground that the outcome of the suit may increase or decrease the collectibility of their claims. This would abandon completely the general notion that a plaintiff may control his action and the FRCP Rule 24(a)(2) requirement that an unrepresented petitioner must show an interest in the underlying transaction to support an absolute right of intervention.") (internal punctuation and citation omitted).

interest in the instant case at all.  Under such circumstances, their interests are too remote to qualify under Rule 24(a).  <u>See</u> <u>Dingwell</u>, 884 F.2d at 638-39 (insurer cannot intervene in a lawsuit brought by an injured party against its insured while contesting coverage: since the insurer's interest in the liability phase of the litigation was contingent on the resolution of the coverage issue, and its interest would disappear if there was no coverage, the insurer's interest was "not cognizable for purposes of Rule 24(a)(2)").

      The motion to intervene must fail for the additional reason that the Cotters have also failed to establish that the disposition of this action may, as a practical matter, impair or impede their ability to protect their interests.  Since the subject matter of the Cotter Suit and the Neponset Suit do not overlap, the outcome of this action will not have any impact on the merits of the Cotters' state court claims.  Whether or not Neponset or NML failed to fulfill their obligations to each other under their Purchase Agreement has no bearing on whether they failed to fulfill their obligations to the Cotters under the Settlement Agreement.  This court is "hard-pressed" to see how the Cotters' ability to vindicate their rights under the Settlement Agreement will be impaired or impeded by this action.  <u>See</u> <u>Langone v. Flint Ink N. Am. Corp.</u>, 231 F.R.D. 114, 120 (D. Mass. 2005) (where outcome of federal suit would not affect outcome of previously filed state court action, no intervention as of right).  This conclusion is further confirmed by the fact that the Cotters are not seeking to participate in this litigation, do not intend to seek discovery, and simply intend to await the liability determination between Neponset and NML.  This

approach highlights the attenuated nature of their relationship to the instant litigation.

See id.

For these reasons, the motion to intervene as of right under F.R.C.P. 24(a)(2) is

denied.

**B.      Reach and Apply Claim Under Mass. Gen. Laws ch. 214, § 3(6)**

Even if the Cotters were parties to this action as intervenors, their reach and apply

claim under Mass. Gen. Laws ch. 214, § 3(6) must fail because they cannot establish that

they have a "debt" within the meaning of the statute.  Mass. Gen. Laws ch. 214, § 3(6)

authorizes:

> creditors to reach and apply, in payment of a debt, any property,
> right, title or interest, legal or equitable, of a debtor, within or
> without the commonwealth....

"Under this statute the court must engage in a two-step process to establish (1) the indebt-

edness of the defendant and (2) the defendant has property that can be reached by the

plaintiffs in satisfaction of the defendant's debt."  Hunter v. Youthstream Media

Networks, Inc., 241 F. Supp.2d 52, 57 (D. Mass. 2002) (citations omitted).  The Cotters

claim fails at step one.

"The first step is in the nature of an action at law and requires the plaintiff to

establish the debt owed by the principal defendant to the plaintiff."  Id.  While not all

contract claims must be reduced to judgment before the statutory reach and apply is

available, a plaintiff may not seek to reach and apply assets where, as here, the defen-

dants' liability "is hotly contested and there are disputed issues of fact which must be

resolved." Id. at 58. "The word 'debt' has never been made to include the simple possibility of being found responsible in damages for the breach of an executory contract, where neither the fact of liability nor the amount can be held affirmatively to exist until a judgment shall have been recovered." H.G. Kilbourne Co. v. Standard Stamp Affixer Co., 216 Mass. 118, 122, 103 N.E. 469, 471 (1913), quoted in Gruet v. F.D.I.C., 879 F. Supp. 153, 155 (D. Mass. 1995) (court allows a reach and apply action on a guarantee to a bank, finding that contract "distinguishable from that of a party to an executory contract, where neither the fact of liability nor the actual amount of damages exists until a judgment has been rendered").

In the instant case, it is still uncertain whether the Cotters will prevail on their claims. Assuming they do, their damages are not susceptible to simple calculation. While the Cotters rely on the liquidated damages clause, the applicability and/or enforceability of that provision has not yet been established. Moreover, the onset and duration of any breach would have to be determined. This analysis necessarily entails a fact-specific inquiry into the Developer's actions at various stages of the permitting process. Therefore, despite the provision for liquidated damages in the Settlement Agreement, the damages in this case cannot be easily determined and do not constitute a debt within the meaning of the statute. See In re Rare Coin Galleries of Am., Inc., 862 F.2d 896, 904 (1st Cir. 1988) ("Since the instant action contains contract, tort and statutory claims not reduced to judgment, the remedy of a statutory bill to reach and apply is not available at this stage of the proceedings under Massachusetts law").

Because the Cotters cannot establish a debt within the meaning of Mass. Gen. Laws ch. 214, § 3(6), their reach and apply claim fails.

## IV.  CONCLUSION

For all the reasons detailed above, this court finds that the Cotters have failed to satisfy the requirements of Fed.R.Civ.P. 24(a) and Mass. Gen. Laws ch. 214, § 3(6). Accordingly, the "Motion of Joe Cotter and Christine Way Cotter to Intervene, Amend the Complaint, and Reach and Apply" (Docket No. 23) is DENIED.

  / s / Judith Gail Dein
Judith Gail Dein
U.S. Magistrate Judge