UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| NEPONSET LANDING CORPORATION,    )<br>             )<br>     Plaintiff/Defendant-in-Counterclaim,    )<br>             )<br>v.           )<br>             )<br>THE NORTHWESTERN MUTUAL LIFE    )<br>INSURANCE COMPANY,        )<br>             )<br>     Defendant/Plaintiff-in-Counterclaim,    )<br>             )<br>v.           )<br>             )<br>TERENCE CONROY, SR.,       )<br>             )<br>     Additional Defendant-in-Counterclaim.   ) | CIVIL ACTION<br>NO. 10-11963-JGD |

**MEMORANDUM OF DECISION AND ORDER ON**
**MOTION TO PRECLUDE ISSUANCE OF**
**EXECUTION AGAINST TERENCE CONROY, SR.**

October 3, 2013

DEIN, U.S.M.J.

## I. INTRODUCTION

This matter is before the court on the motion of the defendant-in-counterclaim, Terence Conroy, Sr. ("Conroy"), to preclude the issuance of an execution against him. (Docket No. 136). On August 13, 2013, following a jury trial and several post-judgment motions, this court entered the Second Amended Judgment in this case. (Docket No. 134). Pursuant to the judgment, Conroy and the plaintiff, Neponset Landing Corporation ("Neponset"), are jointly liable to the defendant/plaintiff-in-counterclaim, The

Northwestern Mutual Life Insurance Company ("NML"), in the amount of $138,466.89. In addition, Conroy is liable to NML for $3,200.50 in legal fees and no expenses, and Neponset is liable to NML for $284,792.50 in legal fees and $148,405.83 in expenses. (Id.).

Conroy has tendered to NML the full amount of attorneys' fees and expenses for which he was responsible. At issue is how to apply funds belonging to Neponset which are being held in escrow. Neponset has requested that these funds be applied to that part of the judgment for which Neponset and Conroy are jointly and severally liable. Such an allocation will result in Conroy having fulfilled his obligations under his personal guarantee. NML, however, argues that the escrow funds should be applied first to the unsecured award of attorneys' fees and costs ordered by this court against Neponset. Such an award would result in Conroy being liable under his personal guarantee for the full amount of the joint judgment.

For the reasons detailed herein, this court finds that NML must honor Neponset's designation of the escrow funds and apply such funds to Neponset's and Conroy's joint and several liability. Therefore, with Conroy's payment of his obligation for legal fees, the judgment against him will be satisfied. The "Motion to Preclude the Issuance of an Execution Against Terence Conroy, Sr." is ALLOWED.

## II. STATEMENT OF FACTS

Neponset commenced this action in November 2010, seeking to recover amounts it claimed were due under the parties' Real Estate Purchase Agreement. NML denied liability and filed a counterclaim on March 21, 2011 seeking payment from Neponset for numerous pre-closing expenses and real estate taxes that it claimed were due. Conroy personally guaranteed Neponset's obligations to pay such expenses and taxes, and NML named Conroy as a defendant-in-counterclaim.

A jury trial was held in May 2013. Shortly before the evidence closed, NML dropped its claim for pre-closing expenses, and limited its counterclaim to amounts it claimed were due for real estate taxes. The jury returned a verdict for NML against Neponset and Conroy in the amount of $84,205.12, the amount due for real estate taxes. (Docket No. 105). Interest at the rate of 12% was entered by the court. Since NML had not requested that the jury find the date when the taxes were due, and did not propose an alternative date, interest was originally calculated by the court from the date the counter-claim was filed and totaled $22,171.68. (Docket No. 106). NML then moved to amend the judgment, seeking to have interest computed from the date of its January 16, 2008 demand for payment of real estate taxes (trial exhibit 33) instead of from the date on which it filed its counterclaim seeking payment, i.e., March 21, 2011. (Docket No. 116). The motion was allowed, and an Amended Judgment was entered, thereby increasing the amount of pre-judgment interest to $54,261.77. (Docket No. 130). As a result, Neponset

and Conroy became jointly and severally liable for a total judgment in the amount of $138,466.89.

Thereafter, the court ruled on NML's motion for attorneys' fees and disbursements, which had been filed pursuant to "mandatory fee-shifting provisions of the parties' contracts." (Docket No. 108). Specifically, Article 14.5 of the Real Estate Purchase Agreement between NML and Neponset (Trial Ex. 4) provides:

> In the event of any litigation between Buyer and Seller concerning this Agreement or the transactions contemplated hereby, the prevailing party shall be entitled to recover from the other party reasonable attorneys' fees and disbursements incurred by the prevailing party in connection with such litigation.

Paragraph 9 of Conroy's Guarantee (Trial Ex. 21) provides:

> If it becomes necessary to enforce the obligations of the Guarantor hereunder, Guarantor agrees to pay the reasonable attorneys' fees and expenses in connection therewith; provided, however, that only in the event that Buyer is the prevailing party shall Buyer also be entitled to recover from Guarantor reasonable attorneys' fees and disbursements incurred by Buyer in connection with pursuing Buyer's rights hereunder.

(See Docket No. 108). Therefore, in its motion NML sought $345,733.00 in attorneys' fees and $148,836.02 in disbursements against Neponset, and $3,200.50 in attorneys' fees, and no disbursements, against Conroy. (Id.). The court awarded NML $3,200.50 in attorneys' fees and no expenses against Conroy, and $433,198.33 ($284,792.50 in attorneys' fees and $148,405.83 in expenses) against Neponset. (Docket No. 133). Conroy has tendered the $3,200.50 to NML, which NML has refused to accept.

Neponset is no longer in business, and the only assets it has available to satisfy the judgment against it is $287,353.48, which is currently being held in an escrow account by First American Title Insurance Company.  It is undisputed that these escrow funds belong to Neponset.  It is further undisputed that these funds could not be released from escrow under the terms of the parties' agreement without NML's consent, and that NML refused to consent while the litigation was pending.

Following the jury verdict, but prior to the award of attorneys' fees and expenses, the parties entered into a stipulation regarding the distribution of the escrow funds.  Specifically, the parties agreed in relevant part as follows:

> 2.  In the event that Neponset and/or Conroy file any appeals from the Judgment entered against them in this case, they agree to post the appropriate bond, or other mutually acceptable form of security, for the Judgment amount (as amended by post-verdict motions, such as the motion for award of attorneys' fees and disbursements that NM will be filing) in excess of the escrowed funds in the amount of $287,353.48 currently held by First American Title Insurance Company;
>
> 3.  NM, Neponset and Conroy agree to consent to the distribution of the escrowed funds once any appeals that Neponset and/or Conroy may file are exhausted[.]

(Docket No. 107).

Neither Neponset nor Cont013 filed any appeals in this action.  On August 28, 2013, Neponset and Conroy sent a proposed stipulation to NML regarding the distribution of the escrow funds pursuant to which the escrow funds would first be applied to the joint liability of $138,466.89 and the balance would then be applied to the

attorneys' fees and costs owed by Neponset to NML.  (Docket 138-1).  In addition, Conroy tendered a check for payment of the full amount of attorneys' fees assessed against him.  (Id.).  NML objected and demanded that the escrow funds be applied first to Neponset's obligation for attorneys' fees and costs.  (Docket 138-2).  NML filed its request for a First Execution on September 5, 2013.  (Docket No. 135).  The instant motion to preclude the issuance of an execution against Terence Conroy, Sr. (Docket No. 136) followed.

Additional facts will be provided below where appropriate.

### III.  DISCUSSION

### The Parties' Agreement

As an initial matter, Neponset argues that the parties' stipulation regarding the escrow funds quoted above (Docket No. 107) mandates that the funds be distributed first to satisfy the joint and several liability.  Since the parties entered into the stipulation before the court had assessed the amount of legal fees and expenses due from the parties, Neponset argues that the distribution agreement should relate only to the joint obligation awarded by the jury.  This argument is not persuasive.  The stipulation referenced the fact that NML would be seeking an award of attorneys' fees and expenses, but did not make it clear whether the escrowed funds would be applied to the joint liability or the individual liabilities.  Therefore, this court finds that the language of the stipulation regarding the escrowed funds is not controlling.

**Neponset's Allocation**

This court finds that NML is bound by Neponset's first-in-time allocation of the escrow funds to that portion of the judgment for which Neponset and Conroy were jointly and severally liable. As the Massachusetts Appeals Court explained in Warren Bros. Co. v. Sentry, Ins., 13 Mass. App. Ct. 431, 433 N.E.2d 1253 (1982):

> It is an established rule that where there are several outstanding debts a debtor has the primary power to direct the application of a payment. If he fails to exercise this right before or at the time of the payment, the creditor is then free to appropriate the money to any of the debts, as he chooses and without concern for the debtor's interests. When both parties fail to exercise their respective rights and the court is thereby required to direct application, it does so on the basis of all of the circumstances of the transaction. Where the equities of the situation do not require a contrary result, the rule is that the payments are applied by law to the liabilities of earliest date.

Id. at 433-34, 433 N.E.2d at 1255 (internal citations, footnote and quotations omitted). In the instant case, the debtor, Neponset, directed the application of the payment of the escrow funds "right before or at the time of the payment," i.e., when it was time to release the funds from escrow. Therefore, its selection of the debt to which it should be applied is controlling.

NML contends that this rule should not apply in the case of a judgment debt, especially because it is well established that a judgment creditor may collect a joint judgment "against one or all of the joint tortfeasors." (See Def. Opp. (Docket No. 139) at 4 (citing Cooper v. Firestone Tire & Rubber Co., 599 F. Supp. 172, 174 (S.D. Ga. 1984) (discussing effect of settlement with one of several tortfeasors))). However, the principle

on which NML relies relates to collection efforts which a creditor may undertake to collect an unsatisfied debt. It is inapplicable here, where a debtor is voluntarily paying part of a judgment. Thus, it does not negate the debtor's allocation of payment.

NML's contention that a judgment debtor has no say in how to apply its payment of a debt is precluded by City Coal Co. of Springfield, Inc. v. Noonan, 424 Mass. 693, 677 N.E.2d 1141 (1997). In Noonan, the issue arose as to whether a payment on a judgment debt should be applied to a joint obligation or not. In language which is directly applicable to the instant case, the court ruled:

> It is well established that, when a debtor pays money to a creditor, absent any express agreement to the contrary, the payment is first applied to the outstanding interest obligation and then to principal. When, however, money is owed under two separate sections of a judgment, one of which applies to the debtor and the other which applies to the debtor and another, and two separate executions are issued, the situation is different. The general rule is that a debtor may select which debt the payment should be applied toward and, if the debtor makes no explicit allocation, the creditor can make the choice.

Id. at 696, 677 N.E.2d at 1143 (internal citations omitted). This is precisely the situation before this court. There are two separate sections of a judgment, one of which applies solely to Neponset and one of which applies to Neponset and Conroy. There is no reason not to follow the general rule allowing the debtor to select the debt toward which the payment should be applied.

**Allocation of "Involuntary" Payment**

NML argues further that Neponset cannot designate the debt toward which payment can be directed because the general rule that a debtor's choice governs "does not apply to involuntary payments in judicial proceedings[.]" (Def. Opp. (Docket No. 139) at 2 (citing 28 Williston on Contracts, § 72.5 (4th ed. 2003))). It is impossible to reconcile this principle with the Noonan court's holding, discussed above, which involved payment of a judgment debt. In any event, the same results would be reached in the instant case even if the escrow payment is deemed to be an involuntary payment made in the course of judicial proceedings.

The principle described by NML derives from a body of case law in which courts have recognized that "[a] debtor and a creditor cannot affect the application of a payment enforced by judicial proceedings." Warren Bros. Co., 13 Mass. App. Ct. at 434-35, 433 N.E.2d at 1256. In such cases, courts have held that the allocation must be left to the court to make "as justice between the parties may require." Id., at 435, 433 N.E.2d at 1256 (quotations and citations omitted). See also New Terminal Stevedoring Inc. v. M/V Belnor, 728 F. Supp. 62, 66 (D. Mass. 1989) ("Where a creditor does not have a 'right' to allocate payments, the court may direct 'as justice between the parties may require.'") (citations omitted)). In the instant case, although the question is a close one, this court concludes that "justice" requires that the payment be applied to the joint obligation of Neponset and Conroy.

The general rule in the United States is that all parties bear their own legal fees and expenses, regardless whether they prevail at litigation or not.  In the instant case, NML has the right to collect attorneys' fees and expenses from Neponset only as a result of the terms of its contract with Neponset.  Although NML entered into a contractual guarantee with Conroy, it did not seek to have Conroy guarantee Neponset's liability for attorneys' fees and expenses.  Thus, NML bore the risk that Neponset would not have sufficient assets to pay its obligations for fees and expenses, and elected not to have that obligation secured by Conroy's guarantee.  Therefore, it is not unfair to leave NML responsible for a portion of its own legal fees and expenses.

Moreover, Conroy's liability to NML is for real estate taxes that NML made virtually no effort to collect from either Neponset or Conroy.  The facts relating to Neponset's obligation for the unpaid real estate bill were straightforward and could have been resolved years ago.  If NML had pursued payment of the real estate bill in a timely manner, there would have been sufficient funds in the escrow account to pay those taxes, and Conroy's liability under his guarantee would have been satisfied.  The fact that Neponset later sought to pursue unrelated claims in an expensive and time-consuming litigation would not have involved Conroy at all.

This court is not unmindful of the fact that NML prevailed at every stage of this litigation, and that it had undertaken significant efforts to halt the litigation without incurring the significant legal fees it eventually incurred.  Thus, to some extent, it is "unfair" that NML is left with legal fees and expenses despite its contract with Neponset.

However, even under the allocation ordered herein, NML will be paid approximately $150,000.00 toward its legal fees and expenses, which is not an insignificant amount. Furthermore, the "unfairness" is a result of Neponset not having sufficient assets to pay its judgment, a risk that NML is contractually obligated to bear.

Based on the particular circumstances presented here, this court concludes that justice requires that the escrow funds be applied first to the joint obligation of Neponset and Conroy.

## IV.  CONCLUSION

For all the reasons detailed herein, the Motion to Preclude the Issuance of an Execution Against Terence Conroy, Sr. (Docket No. 136) is ALLOWED.

                                           / s / Judith Gail Dein
                                          Judith Gail Dein
                                          U.S. Magistrate Judge